454 A.2d 1125

**Stanley P. BROZANA, Jr., Appellant**

v.

**Dr. John L. FLANIGAN, Jr., Dr. Edward W. Cubler, and the Pottsville Hospital and Warne Clinic.**

Superior Court of Pennsylvania.

Argued Sept. 15, 1982.

Filed Jan. 7, 1983.

146

Edward F. Silva, Philadelphia, for appellant.

Wiley P. Parker, Lebanon, for Flanigan, et al.

No appearance entered nor briefs submitted on behalf of Pottsville, et al., appellees.

Before McEWEN, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in several evidentiary rulings and in its charge to the jury. Finding no merit to these contentions, we affirm.

■ Appellant was admitted to Pottsville Hospital on September 14, 1974 for treatment of wounds caused by the accidental discharge of his .41 caliber magnum pistol. The bullet had entered the rear of his right leg, below the knee, exited the front, four inches lower, and then struck the middle toe of his foot. Appellee, a general surgeon at Pottsville Hospital, prescribed a passive treatment of appellant's wound. Appellant subsequently became dissatisfied with the treatment and lack of progress, and on October 5, 1974 obtained a transfer to Reading Hospital. There, his gangrenous leg was amputated below the knee twelve days later. Appellant brought this action against appellee alleging negligence and malpractice in the treatment of his wounds. Following a lengthy trial, the jury determined that appellee had been negligent in his treatment of appellant, but that his negligence was not a substantial factor in the loss of appellant's leg. Following the denial of post-trial motions and the entry of judgment [1], appellant brought this appeal.

1. Appellee contends that this appeal should be quashed because appellant's notice of appeal was filed 56 minutes before the praecipe to enter judgment. On May 18, 1981, appellee mailed a copy of his praecipe to enter judgment and his certification of mailing to appellant. Appellant received the documents in Philadelphia on May 19, 1981 and thereupon mailed his notice of appeal to the Schuylkill County Prothonotary that same day. The notice of appeal arrived at the Prothonotary's office the next day and was time-stamped 56 minutes before appellee's praecipe to enter judgment. Appellee argues that the appeal is thus premature. We shall not construe the rules of appellate procedure so strictly. See Pa.R.A.P. 105(a) (rules shall be liberally construed). Appellant waited until he received a copy of appellee's praecipe to enter judgment pursuant to Pa.R.Civ.P. 237 before sending his own notice of appeal. We shall not hold appellant responsible for the unexplained delay in appellee's praecipe reaching the Prothonotary's office. Moreover, the official docket entries indicate that the praecipe was filed and judgment entered

■ Appellant challenges several of the lower court's evidentiary rulings. "The general rule is that questions concerned with the admission or exclusion of evidence are within the sound discretion of the trial court and will be reversed on appeal only where a clear abuse of discretion exists." *Westerman v. Stout*, 232 Pa.Superior Ct. 195, 202, 335 A.2d 741, 745 (1975). Appellant contends first that the lower court erred in permitting appellee's expert to testify to the success rates of arteriografts generally and in cases of arteriosclerotic blockage. One of appellant's theories of appellee's negligence was the failure to perform an arteriogram, a test that would have indicated damage to the arteries and the need for an arteriograft to restore the blood flow to the lower leg. In response to that contention, appellee's expert testified to reasons why arteriografts are not always successful and opined that under the circumstances of this case, there was no chance for a successful graft. We agree with the lower court that the expert's testimony was relevant to the determination of whether appellee's actions increased the risk of harm to appellant's leg and was thus, admissible. Similarly, the witness's discussion of arteriografts in cases involving arteriosclerotic blockage was not improper. The witness readily admitted under cross-examination that appellant, a 22 year old man, gave no indication of arteriosclerosis and that the reference to arteriosclerotic blockage had been only illustrative. The lower court acted well within its discretion in permitting the witness to explain his testimony through the example.

■ Appellant challenges the lower court's refusal to limit appellee' cross-examination of him. Appellant testified in pretrial depositions that none of the physicians at Reading Hospital had ever discussed with him his treatment at Pottsville Hospital. During trial, he testified on cross-examination that an unnamed doctor or intern had told him on his admission to Reading Hospital that "they waited too

prior to the filing of the notice of appeal. Under these circumstances, we find that appellant has sufficiently complied with the requirements of Pa.R.A.P. 301, and the matter is properly before us.

long to send you down here." (N.T. at 163). Appellee immediately cross-examined him further on the inconsistency with the deposition testimony. During rebuttal, appellant testified additionally that appellee's expert, who had treated appellant at Reading Hospital, told him several weeks after the amputation that the leg may have been salvageable if appellant had come to the Reading Hospital sooner. (N.T. at 569). Appellee again sought to cross-examine appellant as to the inconsistency between this testimony and that given in the deposition and earlier at trial. Appellant contends that the lower court erred in permitting this questioning. A party who testifies "may be cross-examined freely as to any matter relevant and material to the issues." *Jess v. McMurray,* 394 Pa. 526, 527, 147 A.2d 420, 421 (1959). The credibility of a witness on dispositive facts is always at issue. *Cf. Nanty-Glo Borough v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932). The jury was entitled to hear appellant's explanation of his prior failures to recount the conversation. His faulty memory or lack of candor were certainly relevant to the jury's determination of his credibility. Appellant's contention that the cross-examination was unfair and improper because he had earlier refrained from testifying about the conversation because it was hearsay is disingenuous. Appellant was asked by appellee on cross-examination whether he had had any conversations with the Reading doctors about his treatment at Pottsville. Appellee could hardly have objected to the hearsay answer he requested. Moreover, appellant readily divulged the hearsay statement allegedly made by the unnamed doctor or intern at the time of his admission to Reading. Further, appellant explained that he had only recently recalled the conversation. Under these circumstances, it was within the lower court's discretion to permit appellee to probe appellant's inconsistent statements, and thus, we find no error.

Appellant contends finally that the lower court erred in its charge on causation. Specifically, appellant contends the following charge misstates his burden of proof:

> If you find that the defendant was negligent, whether his negligence was a substantial factor in the loss of the leg, or whether his negligence increased the risk of the loss of the leg and substantially caused that loss. These are things which you have to determine.

Appellant argues that he need not prove that appellee's actions "substantially caused" the loss, but only that it was a substantial factor in causing the loss. *See Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978). Although we agree that the excerpted portion of the charge is not entirely accurate, "we must not take the challenged words or passage out of the context of the whole charge, but must look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party." *McCay v. Philadelphia Electric Co.*, 447 Pa. 490, 499, 291 A.2d 759, 763 (1972), quoting *Whitner v. Lojeski*, 437 Pa. 448, 454, 263 A.2d 889, 892 (1970). Earlier in its charge, the court stated:

> Negligent conduct is the legal cause of an injury when it is *a substantial real factor* in bringing about the harm to the plaintiff. (605)

> .  .  .  .  .

> If he proves negligence and proves that the negligence was *a substantial cause of the injury*, then he has made out a case where he can recover. (605–06)

> .  .  .  .  .

> If you are satisfied from the evidence that [appellee] was negligent as I have defined that term, and if you are also satisfied from the fair weight of the evidence that his negligent act or omission increased the risk that the plaintiff would lose his leg, then you would find that *such increased risk was a substantial factor in causing the loss of the leg*. (606)

> .  .  .  .  .

> If you are satisfied from the evidence the [appellee] was negligent, and that his negligence first of all was a

substantial factor in the loss of the limb, or if you find that his negligence increased the risk that the plaintiff would lose his leg, and that *such increased risk was a substantial factor in causing the loss of the leg,* then your verdict would be in favor of the plaintiff. (607–08)

.  .  .  .  .

[Appellant] claims that these items of neglect increased the risk that his right lower leg would have to be amputated and that such neglect or *increased risk were substantial factors in causing the loss of the leg.* (609) (Emphasis added). Taken as a whole, the charge correctly informed the jury that appellee could be found liable if his negligence either was a substantial factor in bringing about the loss of appellant's leg or increased the risk of losing the leg and that increased risk was a substantial factor in the loss of the leg. *See Jones v. Montefiore Hospital,* 494 Pa. 410, 431 A.2d 920 (1981); *Hamil v. Bashline, supra; Hoeke v. Mercy Hospital of Pittsburgh,* 299 Pa.Superior Ct. 47, 445 A.2d 140 (1982); Restatement (Second) of Torts (1965) § 323(a). Moreover, the jury verdict was in the form of special interrogatories and the jury specifically answered "no" to the third interrogatory that asked "Did the negligence of [appellee] increase the risk that [appellant's] leg would be lost and was the increased risk a substantial factor in causing the loss of [appellant's] leg?" Accordingly, we find that the jury was properly instructed, and therefore affirm the order and judgment of the lower court.[2]

Affirmed.

**2.** Appellant contends also that the lower court erred in charging (1) that a physician is not to be held responsible if he followed the course of treatment advocated by a considerable number of his bretheren; and (2) that the degree of care to be exercised by a physician is that exercised by physicians in the same locality. We need not address the propriety of those instructions. The challenged instructions go only to appellee's duty of care and not to whether his violation of that duty was a substantial factor in the loss of the leg. The jury, in finding appellee negligent, found that appellee had not met even these lesser standards of care. Nonetheless, it found that this negligence was not a substantial factor in the loss of the leg. Accordingly, because the

challenged instructions, even if erroneous, were not relevant to the jury's finding on causation, appellant was not harmed.