OLSZEWSKI, Judge:
 

 In 1984, Mrs. Irene Tesauro, appellee, saw Dr. M.L. Perrige, appellant, to have a damaged lower left molar removed. Dr. Perrige, a board-certified oral surgeon, successfully removed the molar; however, a dry socket
 
 [1]
 
 developed shortly after the extraction. After initial attempts at treatment failed, Dr. Perrige administered an injection of alcohol near the affected area.
 

 Immediately after the alcohol injection, Mrs. Tesauro experienced severe pain, burning, and numbness on the left side of her face and mouth. She also experienced difficulty opening her mouth. The diagnosis of several treating physicians was
 
 *623
 
 that Mrs. Tesauro suffered from muscle spasms caused by a damaged trigeminal nerve.
 

 Mrs. Tesauro spent the next five years visiting a multitude of specialists and attempting a variety of treatments in hopes of alleviating the symptoms. In 1989, Dr. Terzis performed an experimental surgery on Mrs. Tesauro that attempted to repair the damaged trigeminal nerve. The operation was very successful and has eliminated the most painful symptoms. But Mrs. Tesauro still suffers from numbness and limited burning on certain areas of her face.
 

 In 1986, Mrs. Tesauro and her husband, Richard Tesauro, filed a dental malpractice lawsuit against Dr. Perrige. The suit alleged that Dr. Perrige was negligent in administering an alcohol injection so close to the trigeminal nerve. The jury returned a verdict in favor of Mr. and Mrs. Tesauro. It awarded $2,747,000 in compensatory damages to Mrs. Tesauro and $593,000 to Mr. Tesauro for loss of consortium. This appeal followed.
 

 Dr. Perrige’s first assertion is that he is entitled to a remittitur or a new trial on damages because the jury verdict was excessive. The decision to grant, or not to grant, a new trial based on the excessiveness of a jury verdict is within the sound discretion of the trial court, and its decision will be upheld on appeal absent a gross abuse of that discretion.
 
 Botek v. Mine Safety Appliance Corp.,
 
 531 Pa. 160, 164-65, 611 A.2d 1174, 1176 (1992);
 
 Harding v. Consolidated Rail Corp.,
 
 423 Pa.Super. 208, 224-26, 620 A.2d 1185, 1193 (1993). In this area of the law, a gross abuse of discretion means that the verdict must be so grossly excessive that it shocks the court’s sense of justice.
 

 Id.
 
 We are not free to substitute our judgment for that of the trial judge or jury.
 
 Botek,
 
 531 Pa. at 164-65, 611 A.2d at 1176.
 

 This Court has set out certain factors that are helpful in determining whether a particular verdict is excessive. A court should consider,
 
 inter alia:
 

 
 *624
 
 (1) the severity of the injury; (2) whether the injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony; (3) whether the injury is permanent; (4) whether the plaintiff can continue with his or her employment; (5) the size of out-of-pocket expenses; (6) The amount of compensation demanded in the original complaint.
 

 Harding,
 
 423 Pa.Super. at 225-26, 620 A.2d at 1193. The court should apply only those factors that are relevant in a particular case, as each case is unique.
 
 Id.; Mineo v. Tancini,
 
 349 Pa.Super. 115, 124-26, 502 A.2d 1300, 1305 (1986). After a careful review of the record in the present case, we find that the evidence fairly supports the jury’s award of damages.
 

 The severity of Mrs. Tesauro’s injury in itself would support the compensatory award of $2,747,000. The testimony establishes that she had a severely damaged trigeminal nerve. The damage caused numbness, burning, and sharp pain on the left side of her face, as well as extreme difficulty in opening her mouth to talk or to eat. Mrs. Tesauro spent the next five years trying to find a cure for the chronic pain. During that time, she consulted numerous specialists and underwent a variety of attempted treatments (including hydrocollators, physical therapy, multiple bite appliances, mouth splints, sliced cork wedges, medications, transcutaneous nerve stimulators, hypnotism, acupuncture, biofeedback, counseling, and speech therapy). R.R. 446a-459a. Notwithstanding all attempts to solve the problem, the pain persisted and the difficulties with essential activities, such as speaking and eating, continued unabated. In 1989, Mrs. Tesauro underwent radical experimental surgery, performed by Dr. Terzis, that finally succeeded in correcting the most oppressive symptoms. While much recovered, Mrs. Tesauro still suffers from numbness and some burning. Her experience clearly falls into the category of a severe injury.
 
 Cf. Kane v. Scranton Transit Co.,
 
 372 Pa. 496, 94 A.2d 560 (1953) (court found an injury to be severe and upheld- a large jury verdict where plaintiff spent nine weeks in the hospital, underwent skin grafting, and
 
 *625
 
 walked on crutches and special shoes);
 
 Libengood v. Pennsylvania Railroad, Co.,
 
 358 Pa. 7, 55 A.2d 756 (1947) (court found an injury to be not very severe and held the jury award to be excessive where plaintiff was only in the hospital for four days and suffered from slight bruises).
 

 The five remaining factors further undermine Dr. Perrige’s claim that the jury verdict was excessive. The injury was manifested by objective physical evidence; Dr. Terzis testified to the damaged nature of the trigeminal nerve that she viewed during the corrective surgical procedure. As for the permanence factor, Mrs. Tesauro’s testimony that she still experienced numbness and burning on the left side of her face, and that she remains unable to chew on that side of her mouth for fear of choking, was sufficient to show that some aspects of this injury are permanent. In terms of employment, the evidence establishes that Mrs. Tesauro no longer runs her own beauty salon and now works part-time for someone else. These facts indicate that while Mrs. Tesauro is still working, her earning potential will probably never be as high as it was prior to the injury. Lastly, while it is true that the jury award was much higher than the actual out-of-pocket expenses and the original claim, these factors alone are not dispositive.
 
 See Botek,
 
 531 Pa. at 164-65, 611 A.2d at 1176 (Supreme Court upheld jury verdict of $350,000 where out-of-pocket expenses were only $800).
 

 Dr. Perrige puts much emphasis on Mrs. Tesauro’s improvement since the 1989 corrective surgery. As the evidence shows, however, this improvement does not diminish the pain that she suffered for five years prior to the 1989 surgery. It also mischaracterizes her present condition as one of total comfort. Her improvement must be viewed relatively: her life is wonderful now relative to how painful it was before the 1989 surgery. Even taking into account the fact that Mrs. Tesauro’s future will be better than her immediate past, this jury verdict does not shock our sense of justice. Therefore, we find no abuse of discretion by the trial court in refusing to grant a remittitur or a new trial.
 

 
 *626
 
 Our analysis is the same regarding the jury award of $593,000 to Mr. Tesauro for loss of consortium. The severity of the injury had a huge impact on the marital relationship. Once again, Dr. Perrige primarily argues that it is better now that Mrs. Tesauro has improved. Notwithstanding the improvement, the jury believed that Mr. Tesauro had suffered a valid loss over that five-year period. It compensated him in an amount that it considered fair and just. This decision does not shock our sense of justice and we see no reason to disturb the award.
 

 Dr. Perrige’s second claim is that the trial court committed reversible error by not instructing the jury on the “two schools of thought” doctrine. Our Supreme Court recently clarified the law on this doctrine in
 
 Jones v. Chidester,
 
 531 Pa. 31, 610 A.2d 964 (1992), writing “[w]here competent medical authority is divided, a physician -will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of recognized and respected professionals in his given area of expertise.” 53l Pa. at 40, 610 A.2d at 969. The burden is on the defendant to prove that there are two schools of thought.
 
 Id.
 
 In determining when the two schools of thought instruction must be given to the jury, the court must evaluate whether the defendant has produced adequate factual support for his claim that there áre a considerable number of professionals who agree with the treatment.
 
 Id.; Bonavitacola v. Cluver,
 
 422 Pa.Super. 556, 564-66, 619 A.2d 1363, 1368 (1993),
 
 appeal denied,
 
 535 Pa. 652, 634 A.2d 216 (1993) (“trial court must initially determine whether the defendant has introduced sufficient evidence that ‘there is a considerable number of professionals who agree with the treatment employed by the defendant’ ”).
 

 In the present case, the factual support offered by Dr. Perrige did not meet this standard. Dr. Perrige claimed that he was following a procedure described in a 1975 text by the former Chief of Oral Surgery at the University of Pittsburgh, Dr. Archer. R.R. 864-65a. Dr. Perrige’s first expert, Dr.
 
 *627
 
 Totian, never claimed that alcohol injections were proper and widely used in the treatment of dry sockets. In fact, he testified that he had never given one and did not teach the procedure to others. R.R. 753-54a. Dr. Perrige’s second expert, Dr. Guernsey, asserted that the use of alcohol injections to treat certain intractable pain was “well known in ... the literature.” His only factual support for the use of alcohol to specifically treat dry sockets, however, was the 1975 text authored by Dr. Archer and a reference in a manual written by a Dr. Shira during Dr. Guernsey’s residency from 1959-1961. R.R. 1007a, 938a, 947a. Dr. Guernsey also stated that he had never personally given an alcohol injection specifically to treat dry socket and had never taught his residents to give such an injection. R.R. 947a-948a. Therefore, the defense’s factual support consists of a 1975 text by Dr. Archer and a brief mention in a thirty-three-year-old manual.
 

 The manual by Dr. Shira is clearly out of date. Especially in the medical and dental fields, evidence of treatments that were used more than twenty years ago is only marginally relevant. It is incumbent upon practitioners to keep current on the safety of their preferred techniques. The text by Dr. Archer is also arguably dated; but even more importantly, it is a text by a single oral surgeon. Even Dr. Guernsey conceded that the alcohol procedure is not mentioned in any other scholarly article or text. R.R. 1007a. The writings and teachings of one individual are inadequate factual support for the proposition that a considerable number of professionals agree with this treatment. In light of the meager defense evidence and the more telling evidence presented by all of the experts at trial, including defense experts, that not one of them had ever used alcohol in such a manner, we must find that the defense failed to meet its burden of producing sufficient evidence to support a second school of thought. Therefore, the trial court did not err by refusing to instruct the jury on the two schools of thought doctrine.
 

 Dr. Perrige’s final assertion is that the trial court committed reversible error in allowing Dr. Perrige to be impeached by prior inconsistent statements in a deposition
 
 *628
 
 from a separate proceeding.
 
 [2]
 
 Specifically, Dr. Perrige urges that Mrs. Tesauro’s counsel failed to lay a proper foundation by not specifically introducing evidence of the similarity of the two cases. Therefore, the evidence was collateral, in that it was unduly prejudicial and confusing for the jury when compared to its low probative value. We disagree.
 

 A party to a lawsuit who chooses to testify “may be cross-examined freely as to any matter relevant and material to the issues.”
 
 Brozana v. Flanigan,
 
 309 Pa.Super. 145, 148-50, 454 A.2d 1125, 1127 (1983) (quoting
 
 Jess v. McMurray,
 
 394 Pa. 526, 527, 147 A.2d 420, 421 (1959)). “The credibility of a witness on dispositive facts is always in issue.”
 
 Brozana,
 
 309 Pa.Super. at 149, 454 A.2d at 1127. In the present case, the issue was whether Dr. Perrige was negligent in administering an alcohol injection to treat Mrs. Tesauro’s dry socket. The prior inconsistent statements offered by Mrs. Tesauro’s counsel were statements describing Dr. Perrige’s phone calls to other area dentists to ask if they used alcohol injections. These statements go directly to Dr. Perrige’s credibility on the central issue of the case: the propriety of using these injections. Therefore, this cross-examination was properly allowed as going to the credibility of a party witness on a central issue in the case.
 

 Dr. Perrige argues that the relevance of the prior inconsistent statement was outweighed by the prejudice to his case because of opposing counsel’s failure to lay an extensive foundation as to the similarity of the two cases. This assertion is simply not supportable.
 
 See Majdic v. Cincinnati Machine Co.,
 
 370 Pa.Super. 611, 614-16, 537 A.2d 334, 336 (1988). In
 
 Majdic,
 
 this Court allowed a witness to be impeached using conflicting interrogatory answers from a prior lawsuit, notwithstanding the fact that the proponent of the evidence failed to establish the substantial similarity of the prior lawsuit.
 
 Id.
 

 Similarly, in the instant case, counsel’s failure to introduce a lengthy foundation as to the similarity between the two cases
 
 *629
 
 did not preclude counsel from using the prior inconsistent testimony to impeach Dr. Perrige. The two cases both involved patients who received alcohol injections from Dr. Perrige, illustrating that the cases were similar enough for the testimony to be relevant. Since the jury was already aware of the prior lawsuit based on remarks from appellee’s witness, Dr. Vernose, the questioning of Dr. Perrige was not unduly prejudicial to the jury. Therefore, we find that the trial court did not abuse its discretion in allowing Mrs. Tesauro’s counsel to impeach Dr. Perrige using his prior inconsistent statements.
 

 In conclusion, we find that Dr. Perrige has failed to establish that the trial court abused its discretion in its final order.
 

 Order affirmed.
 

 [2]
 

 . In 1988, Mrs. Rao, another one of Dr. Perrige’s patients, sued him for injuries resulting from an alcohol injection.