1999 PA Super. 11

**Curtis E. COOKE, Appellee,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES and J. Mark Mackey, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 18, 1998.

Filed Jan. 15, 1999.

Walter R. Milbourne, Philadelphia, for appellants.

Taras M. Wochok, Paoli, for appellee.

Before McEWEN, President Judge, BROSKY and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Before this Court is the appeal of The Equitable Life Assurance Society of the United States and J. Mark Mackey. They challenge the trial court's refusal to compel arbitration or to grant a judgment N.O.V. We affirm.

¶ 2 This case grows out of events surrounding the termination of appellee Curtis Cooke as an insurance agent for appellant Equitable Life. Appellant Mackey was Cooke's immediate supervisor. Cooke became an Equitable agent in 1968. He subsequently became a licensed insurance broker and began offering a wide range of products from different companies to his clients. In 1986 he began having reservations about the financial health of The Equitable.

¶ 3 In anticipation of severing his relationship with The Equitable, Cooke drafted a letter to his clients in which he expressed his concerns and announced a change in his primary insurer affiliation. A copy of this draft was discovered by office staff and given to appellant Mackey. Mackey and The Equitable responded in two ways: first, by terminating Cooke's contract with The Equitable and refusing to pay continuing commissions on renewed policies Cooke had sold; and second, by mailing a letter to all of Cooke's clients (the "Mackey" letter), asserting that he had misinformed them about the financial health of The Equitable.

¶ 4 Cooke responded by filing suit in 1992, alleging defamation, wrongful termination and breach of contract. Appellants filed a motion to compel arbitration pursuant to an arbitration clause contained in Cooke's contract. The trial court denied appellants' motion. The case proceeded to trial; the trial court granted non-suit on the wrongful termination charge in favor of appellants and the jury returned verdicts in favor of appellee on the charges of defamation and breach of contract and awarded damages of $500,000 and $125,000 respectively. Appellants filed motions for post-trial relief, which were denied. This appeal followed.

¶ 5 Appellants raise eight questions on appeal:

1. Did the lower court err as a matter of law in denying Defendant's petition for Order Staying Claims and Compelling Arbitration;

2. Did the jury have presented to it evidence sufficient to support a judgment for defamation against the defendants;

3. Was there evidence, sufficient to support a judgment, that the recipients of the Mackey letter found it defamatory, and/or that plaintiff sustained general damages as a result of the Mackey letter;

4. Did Mackey or Equitable abuse the conditional privilege that pertained to the Mackey letter;

5. Was there in fact a finding by the jury that defendants had breached the Agency Contract by not paying renewal commissions;

6. Was there evidence sufficient to support a jury verdict of $125,000 on the breach of contract claim, or of $500,000 on the defamation claim;

7. Was the admission by the trial judge of plaintiff's Exhibit 20 prejudicial error warranting a new trial; and

8. Was the Verdict Sheet presented to the jury, and the charge to the jury, erroneous and prejudicial to the defendants, warranting a new trial?

Appellants' brief at 3. We address these questions categorically.

¶ 6 Appellants first complain that the trial court erred by denying their Petition for Order Staying Claims and Compelling Arbitration. Appellee, on the other hand, asserts that the issue was waived when appellants failed to immediately appeal the dismissal order. We disagree. Although this Court has not yet considered whether a litigant's failure to immediately appeal an order dismissing a petition to compel arbitration constitutes waiver, our review of the relevant statutes and rules of procedure lead us to conclude it does not.

■ ¶ 7 We agree with our sister appellate court that an order dismissing preliminary objections in the nature of a motion to compel arbitration is immediately appealable. *See Hazleton Area School Dist. v. Bosak*, 671 A.2d 277 (Pa.Cmwlth.1996). Pa.R.A.P. 311(a)(8) makes appealable as of right an interlocutory order "made appealable by statute or general rule." *Id.* 42 Pa.C.S.A. § 7320(a) makes appealable "[a] court order denying an application to compel arbitration under section 7304." *Id.* Section 7304 relates to compelling arbitration under agreements to arbitrate. Clearly, an order dismissing a petition to compel arbitration is immediately appealable.

■ ¶ 8 42 Pa.C.S.A. § 7320(b), however, notes that "[t]he appeal shall be taken in the manner, within the time and to the same extent as an appeal from a final order of court in a civil action." *Id.* Presented to us, then, is the question of the consequence of failing to appeal an order "within the time and to the same extent as an appeal from a final order of court in a civil action." Our answer is found at Pa.R.A.P. § 311(g)(1)(I), which states, "failure to appeal ... [u]nder Subdivisions (a), (b)(2) or (f) of this rule shall not constitute a waiver of the objection to the order." *Id.* This provision goes to the heart of appellee's argument and negates it. We find that appellants' failure to immediately appeal the trial court's order does not warrant dismissal of the issue on appeal, and therefore we reach the merits of appellants' claim.

¶ 9 Appellants argue that the employment contract between appellants and appellee contained an arbitration clause requiring the

parties to arbitrate "any dispute, claim or controversy that might arise" between them, and that this clause was controlling in the instant case. Appellants' brief at 19. The trial court dismissed appellants' motion and preliminary objections without opinion, and the opinion filed subsequent to appellants' appeal does not address the issue.[1] Appellants suggest that the trial court made its decision based upon appellee's argument that the clause also contained an exception that controlled the instant dispute: "with the exception of disputes involving the insurance business of any member which is also an insurance company...."

¶ 10 We have held that the trial court must file an opinion addressing the issues set forth in the appellants' Pa.R.A.P. 1925 statement:

> The Pennsylvania Rules of Appellate Procedure require a trial court, upon notice of appeal from post-trial motions or other orders, to file an opinion detailing the reasons for the order or for the rulings or matters complained of or to specify in writing the place in the record where such reasons may be found. Pa.R.A.P.1925(a). The purpose of Rule 1925(a) is to give the appellate court a reasoned basis for the trial court's decision and to require the trial judge to consider thoroughly decisions regarding post-trial motions....
>
> Ordinarily the remedy for non-compliance with the Pa.R.A.P.1925(a) is a remand to the trial court with directions that an opinion be prepared and returned to the appellate court.

*Gibbs v. Herman*, 714 A.2d 432 (Pa.Super.1998) (citations omitted) (*quoting Duquesne Light Company v. Woodland Hills School District*, 700 A.2d 1038, 1045–46 (Pa. Cmwlth.1997), *appeal denied* —— Pa. ——, 724 A.2d 936, 1998 Pa. Lexis 1193 (Pa.1998)). The lack of a 1925 opinion addressing the issue is not fatal for our review. "The interpretation of a contract is a question of law. In deciding an issue of law, an appellate court need not defer to the conclusions of the trial court." *Halpin v. LaSalle University*, 432 Pa.Super. 476, 639 A.2d 37, 39 (Pa.Super.1994), *alloc. den'd* 542 Pa. 670, 668 A.2d 1133 (Pa.1995). The reasoning of the trial court is not crucial to our determination of contract interpretation.

¶ 11 We are severely hampered in our analysis, however, by appellants' failure to place anywhere in the record a single copy of the document they so heavily rely on. Paragraph 9 of appellants' Petition for Order Staying Claims and Compelling Arbitration asserts that the "U–4" form Cooke executed when he began working with Equitable requires him to arbitrate any dispute that may arise incidental to his employment "under the rules, constitutions, or by-laws of the organizations with which [he] register[s]." Defendants' Petition for Order Staying Claims and Compelling Arbitration, exhibit B, at 4, ¶ 5. The U–4 form shows that Cooke was registered with the National Association of Securities Dealers, a private organization. Appellants quote the NASD Manual and cite from the arbitration procedures the clause that constitutes the center of this issue. They fail, however, to attach a copy of the document upon which they rely.

¶ 12 Pa.R.C.P. 1019(h) states:

> A pleading shall state specifically whether any claim or defense set forth therein is based upon a writing. If so, the pleader shall attach a copy of the writing, or the material part thereof ....

*Id.* Here, appellants have asserted a defense based upon a writing, but failed to attach a copy of that writing to their petition. We are constrained to find that, for this reason alone, the trial court did not err as a matter of law by dismissing appellants' petition to compel arbitration.[2]

¶ 13 Appellants next advance several arguments contending that the evidence was insufficient to find liability and that the trial court should have thus granted judgment n.o.v. on this basis. It is well settled that judgment n.o.v. is proper only when "no two reasonable minds could fail to

---

1. We note that the trial judge who entered the order dismissing appellants' motion to compel arbitration, The Honorable Berel Caesar, is deceased.

2. We may affirm on grounds other than those relied upon by the trial court. *Commonwealth v. Clutter*, 419 Pa.Super. 275, 615 A.2d 362, 366 n. 7 (Pa.Super.1992).

agree that the verdict was improper." *Scott v. Southwestern Mutual Fire Association*, 436 Pa.Super. 242, 647 A.2d 587, 590 (Pa.Super.1994). We must grant the verdict winner all reasonable inferences, and determine if there was sufficient competent evidence to sustain the verdict. *Robertson v. Atlantic Richfield*, 371 Pa.Super. 49, 537 A.2d 814 (Pa.Super.1987). We find that the record demonstrates that sufficient evidence was presented such that the jury could reasonably infer liability.

¶ 14 The first complaint raised by appellants is that there was no evidence that the Mackey letter was understood by any of the recipients to be defamatory. The record belies this assertion. As the trial court noted, Federal Judge Charles Smith testified: "I was shocked that anybody would accuse Mr. Cooke of misrepresentation. And I was shocked that any former employer would bad mouth an employee that had been with them for so many years when they left." N.T. Trial excerpts, at 137. A jury could reasonably infer from this statement that the witness understood the letter to be defamatory.

¶ 15 Appellants, though, conflate appellee's burden of showing the defamatory character of the communication with the burden to show damages, and suggest there is no evidence to show appellee was damaged by the letter. This is not so. Appellee testified that he began experiencing difficulty scheduling appointments with existing customers after publication of the Mackey letter. N.T. Trial excerpt, at 167–68. While appellants may advance many alternative theories as to why appellee experienced difficulty continuing his business, these possibilities do not necessitate a judgment n.o.v., as long as the verdict actually reached was one of the reasonable alternative theories. *Smith v. Bell Telephone Co., of Pennsylvania*, 397 Pa. 134, 153 A.2d 477, 479–80 (Pa.1959).

¶ 16 Appellants also argue the judgment n.o.v. should have been granted because there was no evidence that Mackey was negligent or reckless in sending his letter. Again, the record contains sufficient evidence by which a jury may reasonably conclude that Mackey sent his response letter to all of Cooke's Equitable clients without first ascertaining whether Cooke had sent his draft to all or any of his clients. Mackey received a copy of the draft from a new business manager who had found it in the supply room. Mackey testified that he never investigated whether the letter had been sent to any clients, never knew whether the letter had been sent, or even talked to Cooke about the draft, N.T. Trial excerpt, at 418–19, 42. Furthermore Mackey admitted that, when he wrote his letter accusing Cooke of misrepresenting Equitable, he "did not know the exact information but assumed that [Equitable's percentages of defaulted bonds and foreclosed real estate investments] were not as bad as Executive Life." Finally, Mackey stated that he never spoke to any of Cooke's clients who had switched policies from Equitable to ascertain whether they had suffered adverse economic consequences before accusing Cooke of exposing Equitable clients to such consequences. N.T. Trial excerpt, at 428–29. From these facts, a reasonable factfinder could determine that Mackey acted rashly and negligently in reacting to Cooke's draft brought to his attention. The evidence to support such a conclusion was sufficient.

¶ 17 Appellants also contend that the evidence was insufficient to sustain a verdict of $125,000 on the breach of contract claim or $500,000 on the defamation claim. As previously noted, plaintiff met his burden of proving damages by presenting evidence that he had been unable to schedule meetings with past customers after Mackey sent his letter. Cooke also demonstrated a diminishment in earnings following publication of the Mackey letter. As long as it is reasonable to infer that this loss was a result of the letter, the evidence will be deemed sufficient to sustain the finding. *Smith*, 153 A.2d at 479–80.

¶ 18 As to whether the cumulative sum of $650,000 is an excessive award of damages, we are limited in our review to determining whether the verdict shocks this Court's sense of justice. *Tesauro v. Perrige*, 437 Pa.Super. 620, 650 A.2d 1079, 1081 (Pa.Super.1994). Simply put, the verdict in this case does not shock us. Appellant was an established agent with nearly three decades of experience selling insurance products

and building a client base. He offered credible evidence that this client base has been damaged, a loss that may be difficult to calculate over the remainder of his career, a career that now involves the sale of long-distance telephone services rather than insurance. Additionally, he offered evidence that his losses from unpaid renewal commissions alone would be in the range between $35,000 to $50,000. We do not find it alarming that a jury may assess the losses associated with the breach of contract and damages to appellant's reputation to be worth $650,000.

¶ 19 We find that the evidence supports the jury's findings that appellants published the letter relating to the appellee, that the letter was understood to be defamatory by its recipients and that appellee was harmed by the defamation. We also find the evidence sufficient to support a general judgment of defamation against appellants.

¶ 20 Appellants also contend that the evidence was insufficient to find abuse of conditional privilege. We need not determine here whether any conditional privilege actually existed in this case because we find that, even if a conditional privilege did exist, it was abused by appellants. A conditional privilege is abused if "the publication is actuated by malice or negligence." *Miketic v. Baron*, 450 Pa.Super. 91, 675 A.2d 324, 329 (Pa.Super.1996) (*quoting Beckman v. Dunn*, 276 Pa.Super. 527, 419 A.2d 583, 588 (Pa.Super.1980)). Because of our previous finding that the evidence was sufficient to find negligence, we are compelled to find the evidence sufficient to support a finding that appellants abused any existing conditional privilege.

¶ 21 Appellants next argue that there was no finding by the jury of breach of contract. As appellants phrase it,

Other than non-payment of the renewal commissions, and termination of employment, there was no other evidence of any breach of contract by defendant. It would appear that the jury, if it be deemed that they found any breach of contract, must have impliedly found a breach resulting from the termination ... There was no testimony in the record that would permit

a finding of damages in the amount of $125,000 based on non-payment of the renewal commissions. Any such finding would be based upon a failure to comprehend the fact that the court had granted a nonsuit as to the termination issue.

Appellant's brief, at 38. We do not believe that the verdict indicates a misunderstanding of the breach of contract issue. Rather, we believe the "excessive" verdict is just that – a verdict based on the jury's inferred amount of losses due to non-payment of renewal commissions. We conclude, therefore, that the jury did find breach of contract.

¶ 22 The next error appellants complain of involves an admission of evidence, contending that admission of plaintiff's Exhibit 20 was prejudicial and warrants a new trial. We note that the admission of evidence is within the sound discretion of the trial court and will not be reversed absent a clear abuse of that discretion. *Commonwealth v. Weber*, 549 Pa. 430, 701 A.2d 531, 534 (Pa.1997). Appellants assert that the exhibit was not presented to them until the trial and that by waiting until trial to present it, appellee violated the pre-trial court order. However, the exhibit had only been prepared the day before, N.T. Trial excerpt, at 174, and was not available until trial. We do not believe the trial court abused its discretion by accepting appellee's reason for late submission under the "for good cause" exception to the pre-trial order. *See* S.R. 5b. As to the testimony regarding appellee's pension benefits, we note that appellants failed to object at the conclusion of appellee's direct examination of Mr. Conlon that a foundation had never been laid for the earlier admission of appellee's loss of benefits. This issue is therefore waived.

¶ 23 Finally, appellants contend that the verdict sheet and the charge used by the trial court were erroneous and prejudicial to them. Appellants argue that the court erred by failing to instruct the jury that they must find appellants' publication malicious or negligent or that a conditional privilege had been abused and cite one paragraph of the charge for our consideration. We have previously held that,

In reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against the background of evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.

*Harkins v. Calumet Realty Co.*, 418 Pa.Super. 405, 614 A.2d 699, 705 (Pa.Super.1992), *quoting Reilly v. SEPTA*, 507 Pa. 204, 489 A.2d 1291, 1305 (Pa.1985).

¶ 24 Our review of the jury charge reveals the following instructions:

If you do so find in favor of Mr. Cooke and against the defendants, you must also determine for the purposes of damages whether the defendants acted intentionally, recklessly or negligently. A person acts intentionally when he publishes or makes a defamatory communication and he knows it is false.... A person negligently publishes a defamatory communication when a reasonable person under the circumstances would not have published the communication. This is where the person exhibits an absence of ordinary care and diligence in ascertaining the true facts.

Members of the jury, you heard a reference to conditional privilege.... And a person who is privileged to publish false and defamatory communications may not abuse this privilege. It is for you to determine whether the defendant abused this privilege, and if you find he did, you may return a verdict in favor of Mr. Cooke and against Mr. Mackey and The Equitable.

A communication written on a proper occasion under proper motive for a proper purpose in a proper manner and based upon reasonable cause is privilege.

The privilege is abused, however, if Mr. Mackey made the communication with knowledge that it was false or made the communication recklessly, that is in utter disregard as to whether it was true or false.

A privilege may also be false [sic] if the publisher exceeds the scope of the privilege. In other words, if the defamatory material is communicated to persons who do not share a common interest in the communication.

In this area of defamation Mr. Cooke has the burden of proof.... *Keep this in mind, the plaintiff such as Mr. Cooke in a defamation case has the burden of proving, one, the defamatory character of the communication. Two, its publication by the defendants. Next, its application to the plaintiff. Next, the understanding by the recipient of its defamatory meaning. Next, the understanding by the recipient as intended to be applied to the plaintiff. Next, special harm resulting to the plaintiff from its publication. And finally, abuse of a conditionally privileged occasion.*

N.T. Trial excerpt, at 602–06 (emphasis added). These instructions accurately reflect the law of defamation in Pennsylvania. *Miketic v. Baron*, 450 Pa.Super. 91, 675 A.2d 324, 327 (Pa.Super.1996). We cannot say, then, that viewing the charge as a whole, the trial court erred in explaining the law. Appellants' assertion is without merit.

¶ 25 Judgment of the trial court is affirmed.

¶ 26 McEWEN, President Judge, Concurs in the Result.