620 A.2d 1185

**Charles P. HARDING**

v.

**CONSOLIDATED RAIL CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 15, 1992.

Filed Feb. 23, 1993.

Ralph G. Wellington, Philadelphia, for appellant.

Richard D. Gilardi, Pittsburgh, for appellee.

Before TAMILIA, JOHNSON and HESTER, JJ.

JOHNSON, Judge.

Consolidated Rail Corporation (Conrail) appeals from an order of the trial court which awards Harding the jury's

verdict damage amount of 3.8 million dollars plus post-judgment interest of 6% per annum. We affirm.

Conrail presents eight issues for our review:

1. Whether Conrail is entitled to judgment notwithstanding the verdict because the evidence was insufficient to establish that Conrail was the cause of Harding's injuries.

2. Whether the trial court erred in instructing the jury that Conrail was negligent *per se* because it did not enforce the Blue Flag Rule.

3. Whether the trial court erred in its instructions to the jury regarding contributory negligence.

4. Whether the trial court erred in instructing the jury that it could find Conrail negligent due to its method of assembling trains.

5. Whether the trial court erred in refusing to permit Conrail to cross-examine its own witness.

6. Whether the trial court erred in failing to find the jury verdict to be excessive.

7. Whether the trial court erred in instructing the jury that Harding could recover for lost economic horizons.

8. Whether the trial court erred in refusing to instruct the jury that the amount of the damage award was not subject to Federal Income Tax.

Before addressing these issues, we will explore the facts of the present case. Harding's action was brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60, to recover damages which Harding suffered while working as a trainman in Conrail's Conway yard in Beaver, Pennsylvania, on August 31, 1986.

In the Conway yard, incoming trains arrived in the receiving yard and were separated into single cars. The various cars were then pushed up a hill or "hump", and then rolled or "drilled" down the other side of the hump into the classification yard. The cars coming into the classification yard were routed to different tracks through the use of a computer by the retarder operator, who could slow the cars through the use of "retarders", devices that put pressure on the train wheels.

The retarder operator also had the ability to "blue flag" a track, that is, to "lock out" or not allow any cars to enter a track at a particular time.

From the classification yard, new trains were assembled by the yard crew by joining together cars from several different tracks. In order to provide braking power for the newly assembled train to reach the departure yard, trainmen were required to go between the train cars to couple air hoses on the first several cars behind the engine. Once a new train had been assembled and the air hoses coupled, the train was then moved to the departure yard.

Harding was working as a member of a classification yard crew when his injuries occurred. Harding's crew was unable to complete their first train assembly due to a traffic delay. While waiting to continue his first assignment, Harding went to a straight section of track containing the first several cars of another train and began coupling the air hoses for the braking system. Harding did not request that the track be blue flagged, although he had checked the track for incoming cars prior to beginning to couple the air hoses. Harding was injured when an incoming car was drilled onto the track on which he was working, causing the cars already on the track to move, knocking Harding down and trapping his feet under one of the train cars. Harding suffered a total amputation of his left foot and a partial amputation of his right foot as a result of the accident.

Harding brought the instant action against Conrail seeking damages for his injuries. Following a jury trial, a verdict was rendered in Harding's favor. Conrail's post-trial motions were denied and this appeal followed.

First, Conrail alleges that the trial court erred in failing to direct a verdict in its favor. Conrail contends that because this case should not have been submitted to the jury, this Court should grant Conrail a judgment notwithstanding the verdict. We disagree.

This action arises under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. Jurisdiction in

FELA cases is concurrent in federal and state courts, however, those FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal. 45 U.S.C. § 56; *St. Louis Railway Co. v. Dickerson*, 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985). In determining whether an issue in a FELA case presents a jury question, we are guided by the standard set forth by the United States Supreme Court:

> Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence played any part at all in the injury or death.

*Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506–507, 77 S.Ct. 443, 448–449, 1 L.Ed.2d 493, 499 (1957). In *Ciarolla v. Union Railroad Company*, 235 Pa.Super. 137, 141, 338 A.2d 669, 671 (1975), this Court cited the *Rogers* standard with approval, stating that only in the most frivolous cases may the courts deny a FELA plaintiff his qualified right to a jury trial. Thus, only in those extremely rare instances when there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee, may a court withdraw a case from the jury's consideration. *Pehowic v. Erie Lackawanna R. Co.*, 430 F.2d 697, 699 (3rd Cir.1970).

█ Moreover, a judgment notwithstanding the verdict may be entered only in a clear case, where after viewing the evidence in the light most favorable to the verdict winner, no two reasonable minds could fail to agree that the verdict was improper. *Cashdollar v. Mercy Hospital*, 406 Pa.Super. 606, 595 A.2d 70 (1991).

■■■ After a review of the record, in light of the above standards, we conclude that the evidence could support the jury's finding that Conrail was liable for Harding's injuries, either because Conrail had violated its duty to provide a safe workplace to its employees, (*see e.g. Bailey v. Central Vermont Railway, Inc.,* 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943)), or because Conrail had failed to implement or enforce safety rules required under FELA and its regulations. *See Ybarra v. Burlington Northern Inc.,* 689 F.2d 147 (8th Cir. 1982). We, therefore, conclude that the trial court properly submitted the question of liability to the jury. We also conclude that judgment notwithstanding the verdict is improper in this case, as FELA imposes liability upon an employer if its negligence played any part, however small, in the injury. *Rogers,* 352 U.S. at 508, 77 S.Ct. at 449, 1 L.Ed.2d at 500. We are unable to conclude that no reasonable juror could have found that Conrail's negligence contributed to Harding's injuries.

Second, Conrail contends that the trial court erred in instructing the jury that Conrail was negligent as a matter of law because it did not enforce the safety regulations requiring the implementation of a blue flag rule. We find this contention to be without merit.

■■■ Liability, under FELA, is predicated upon the negligence of the railroad. 45 U.S.C. § 51. The United States Supreme Court has set a more liberal standard for negligence *per se* under FELA, than is recognized under the traditional law of torts. *Kernan v. American Dredging Co.,* 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958). Negligence *per se* exists, under FELA, if the violation of the statute contributes to the death or injury which is the subject of the suit, without regard to whether the injury flowing from the statutory violation was the type of injury which the statute sought to prevent. *Id.* at 433, 78 S.Ct. at 398, 2 L.Ed.2d at 389. Negligence *per se* can also attach, under FELA, when safety regulations promulgated under that statute are violated. *Ries v. National Passenger Railroad Passenger Corp.,* 960 F.2d 1156 (3rd Cir.1992);

*Eckert v. Aliquippa & Southern Railroad Co.,* 828 F.2d 183 (3rd Cir.1987).

Under FELA, once it is established that the statute or a safety regulation has been violated by the railroad, the injured employee need not prove additional negligence on the part of the railroad. *Crane v. Cedar Rapids & Iowa City Railroad,* 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969). The railroad's liability is based upon the breach of the statutory duty, and cannot be escaped by proof of the railroad's due care or diligence. *Eckert* at 185. Once a railroad employee establishes negligence *per se* on the part of the railroad, the employee can recover damages if the employee can prove that the injury suffered resulted in whole or in part from the railroad's violation of a safety statute or regulation. *Crane* at 166, 89 S.Ct. at 1708, 23 L.Ed.2d at 180; *Eckert* at 186–87.

In the present case, the pertinent regulation requires that any railroad operating a remote control hump facility have in effect an operating rule whereby an employee coupling air hoses between trains must request that other trains be locked off the track while the employee is working between pieces of rolling equipment. 49 CFR § 218.39. Conrail concedes that it had developed a blue flag rule pursuant to § 218.39. However, the record reveals that the blue flag procedure was not routinely used by Conrail employees, and its use was not enforced by Conrail.

Conrail's duty, under FELA, was not only to promulgate safety rules but to enforce those rules. *See Ackley v. Chicago and North Western Transportation Co.,* 820 F.2d 263, 268 (8th Cir.1987); *Ybarra v. Burlington Northern, Inc.,* 689 F.2d 147, 150 (8th Cir.1982). Where the evidence shows that the railroad customarily does not enforce a safety rule, the jury is entitled to consider whether the custom constituted negligence and whether it caused in whole or in part, the employee's injury. *Ybarra* at 150; *Flanigan v. Burlington Northern, Inc.,* 632 F.2d 880, 883–884 (8th Cir. 1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981).

The trial court's instruction to the jury regarding negligence *per se* under FELA accurately reflects this prevailing view. The trial court stated:

In addressing the question of negligence you may consider the evidence which was presented concerning the Blue Flag safety and operating rules, and Conrail's alleged failure to enforce those rules. Conrail had a legal duty as an employer at the time and place of Charles Harding's injury to publish safety rules, and also had the legal duty to publish an operating rule that provided protection for employees such as Charles Harding who were coupling air hoses between rail cars. Conrail also had the legal duty to enforce its Blue Flag Rule in the operating rule which provided protection for employees who were coupling air hoses.

Charles Harding alleges that Conrail's failure to enforce its safety rules constitutes negligence, and has offered evidence that Conrail did not enforce its Blue Flag Safety Rule and did not comply with or enforce its Blue Flag operating rule. This evidence may be considered by you, members of the jury, in determining whether Conrail was negligent in this case. In other words, you may consider whether Conrail's failure to enforce either of those safety rules constitutes negligence, and whether that negligence played any part in causing Charles Harding's injuries and damages.

N.T., January 17–18, 1990, at 39–40.

The trial court, later in its jury instructions, explained the regulation requiring that Conrail implement and enforce a blue flag rule and the requirements under FELA for a finding of negligence *per se:*

If you find from a preponderance of the evidence that Conrail failed to comply with or enforce its own Blue Flag operating rule, then you must find that Conrail was negligent as a matter of law.

N.T., January 17–18, 1990, at 47–48.

In determining whether the trial court erred in its instructions to the jury regarding negligence *per se,* we are bound by the standard enunciated by our supreme court in *Reilly by*

*Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 231, 489 A.2d 1291, 1305 (1985):

> In reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was prejudicial to the complaining party.

In reviewing the trial court's instructions in the present case, we are unable to conclude that the charge, in its entirety, was erroneous regarding the standard that the jury was bound to implement in order to determine if Conrail was negligent *per se.* Therefore, we dismiss this issue as meritless.

Third, Conrail claims that the trial court erred in its instructions to the jury regarding contributory negligence. We disagree.

Under FELA, 45 U.S.C. § 53 describes how an employee's negligent conduct affects his recovery under the statute:

**§ 53. Contributory negligence; diminution of damages**

> In all actions on and after April 22, 1908 brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided,* That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury and death of such employee (emphasis in original).

In this case, Conrail requested and received a jury instruction on the concept of contributory negligence and how a finding of contributory negligence would reduce Harding's damages proportionately. Conrail's objection under issue

three concerns the trial court's instruction pursuant to 45 U.S.C. § 53 that if Conrail were found negligent *per se*, Harding's damages could not be reduced by his own contributory negligence. N.T., January 17–18, 1990 at 45–46. Conrail maintains that Harding's injuries were solely due to his own negligence in undertaking to couple the air hoses on the train cars without instructions to do so and without requesting a blue flag for the track. Conrail alleges that it cannot be held liable for Harding's violation of a safety rule and that Harding was the sole cause of his own injuries. Conrail relies on *Flanigan v. Burlington Northern, Inc., supra*, to support its contentions, that (1) the trial court's instructions did not permit the jury to consider the issue of proximate cause and (2) an employee's violation of a statutory rule could be considered as evidence of his contributory negligence. We find that the holding in *Flanigan* supports the trial court's instructions in this case.

In *Flanigan*, a railroad employee was injured when the trains upon which he was coupling air hoses rolled over his leg after another car was drilled on to the same track. The employee did not use a blue flag to indicate that he was working between the trains. However, he offered evidence that the railroad did not enforce the use of the blue flag rule by its employees. The court in *Flanigan* held that an employee's violation of the blue flag rule could not result in the employee being held the sole proximate cause of his injuries *per se*. *Flanigan* at 883. The court concluded that whether an employee's violation of a blue flag rule, that was not routinely enforced, was a cause of the employee's injuries or constituted contributory negligence was a question reserved for the jury. *Flanigan, supra*.

A review of the record in this case reveals that any violation of the blue flag rule by Harding could have been viewed by the jury as evidence of Harding's contributory negligence. The jury also could have viewed the same facts as evidence that Conrail did not enforce its statutorily required safety rules which could result in Conrail being held negligent *per se*. We conclude that the jury was properly instructed on

the principles regarding Conrail's negligence and negligence *per se* and Harding's contributory negligence. The jury, as the sole fact-finder, was free to apply the law to the facts as it found them in this case. We, as an appellate court, are not free to reverse the jury's verdict merely because another conclusion could be drawn from the evidence presented at trial:

> Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.

*Lavender v. Kurn*, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946).

Here, the trial court submitted the issue of Conrail's negligence and Harding's contributory negligence to the jury. The trial court also, in accordance with 45 U.S.C. § 53, instructed the jury that if it found Conrail to be negligent *per se*, rather than negligent, Harding's contributory negligence could not be used to decrease the amount of his reward. We find no error in the trial court's instructions and, as the jury's verdict is based on the evidence, we are unable to conclude that the jury's finding on this issue constitutes reversible error.

Fourth, Conrail contends that the trial court erred in submitting to the jury the issue of whether Conrail's choice of methods for assembling trains constituted negligence under FELA. We disagree with this contention.

Conrail correctly alleges that it was under no obligation to furnish employees with the latest or best appliances with which to work, if standard appliances are reasonably safe and suitable for such use. *See Baltimore and Ohio Railroad v. Groeger*, 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419 (1925); *see also Soto v. Southern Pacific Transportation Co.*, 514 F.Supp.

1 (W.D.Tex.1979), *aff'd*, 644 F.2d 1147 (5th Cir.1981), *cert. denied*, 454 U.S. 969, 102 S.Ct. 514, 70 L.Ed.2d 386 (1981). In *Groeger*, the trial court submitted the question of whether the failure of the railroad to have the most recent type of plug in its boiler constituted negligence. The Supreme Court held that negligence cannot be proved by the mere failure of the railroad to have installed the latest technology in its boiler systems, absent a demonstration that the technology in place was defective or dangerous. *Id.*

■ Here, however, the issue put forth for the jury's consideration was whether Conrail's choice, between the available work methods, of permitting employees to go between trains to couple air hoses constitutes negligence. The issue of whether an employer's choice of work methods constitutes negligence was addressed by the United States Supreme Court in *Stone v. New York, C., & St. L.R. Co.*, 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441 (1953). In that case, the railroad straw boss chose one of three available methods for removing a railroad tie. In addressing the question of the negligence of the railroad the Court stated:

> We think the case was peculiarly one for the jury.... Whether the straw boss in light of the risks should have used a different method to remove the tie or failing to do so was culpable is the issue. To us it appears to be a debatable issue on which fair-minded [persons] would differ.

*Id.* at 409, 73 S.Ct. at 359, 97 L.Ed. at 445.

In this case, Harding did not allege that Conrail needed to supply the most recent technological advances in appliances for the use of persons working in the trainyards. Rather, the evidence of record establishes that there was another method of supplying braking power to trains in the trainyard, through the use of an engine and a slug (an engine with no controls), that did not involve the need for the railroad worker to go between the trains to couple the air hoses. This alternate method of supplying braking power to trains in the yard did not involve supplying new equipment or technology in order to accomplish the same task, and the evidence establishes that

Conrail was using the engine-slug method at its other train-yards.

The trial court instructed the jury to evaluate the work methods available to Conrail and its choice of work method at the time of Harding's accident. The jury was then instructed to consider the evidence presented and determine whether Conrail's choice of work method unreasonably exposed Harding to danger. As this is a question upon which reasonable persons might differ, we conclude that the trial court did not err in leaving this question to the jury.

Fifth, Conrail maintains that the trial court erred in failing to permit Conrail to cross-examine its own witness. We find this contention to be meritless.

At trial, Conrail offered the testimony of Roger Cucinelli who was an eyewitness to Harding's condition immediately after the accident. At trial, Cucinelli was asked by counsel for Conrail if he had spoken with Harding at the scene of the accident:

Cucinelli: Well, no. It wasn't like any, like a conversation we're having. He was just—he was going into shock.
Question: Did he say anything to you?
Cucinelli: He was just mad at himself. He was just mad like, you know—just mad.

N.T., January 12–17, 1990 at 280. After Cucinelli's response to questioning, counsel for Conrail asked if he could refresh the recollection of the witness. Cucinelli responded that he was not having trouble remembering the events that transpired at the time of the accident. Counsel for Conrail then requested that the trial court allow Conrail to impeach its own witness. The trial court denied Conrail's request.

▮▮▮ In Pennsylvania, it is within the discretion of the trial court whether to allow a party to cross-examine its own witness. *Commonwealth v. McKendrick*, 356 Pa.Super. 64, 514 A.2d 144 (1986), *appeal denied*, 514 Pa. 629, 522 A.2d 558 (1987). A party may request to cross-examine its own witness on a plea of surprise when the witness has given testimony which was unexpected, contradictory to the witness' earlier

statements and harmful to the calling party. *Commonwealth v. Bartley*, 395 Pa.Super. 137, 576 A.2d 1082 (1990). However the burden is on the calling party to prove that the statements at issue were truly contradictory and that injustice will result upon a denial of the request to cross-examine his own party. *Commonwealth v. Gee*, 467 Pa. 123, 354 A.2d 875 (1976).

 Here, Conrail pleaded surprise to Cucinelli's testimony, stating that the trial testimony was inconsistent with Cucinelli's previous statements in which he said that Harding wasn't delirious and had "kept his cool" after the accident and that Harding had blamed himself for his injuries. The trial court concluded that the statement about Harding going into shock did not indicate that Harding was not rational or had "not kept his cool" after the accident and was, thus, not inconsistent with Cucinelli's previous statements. Moreover, Conrail was in no way precluded from asking Cucinelli about Harding's appearance at the accident site or about how Harding was reacting to his injuries. Additionally, Conrail was not precluded from asking Harding about his state of mind or his immediate emotional reactions after the accident. Conrail did not establish at trial, nor in this appeal, what injustice resulted from the ruling of the trial court regarding this issue. Therefore, after a thorough review of the record, we are unable to conclude that the trial court erred in refusing Conrail's request to cross-examine Cucinelli.

Sixth, Conrail contends that because the jury's verdict is excessive, that Conrail is entitled to a remittitur or a new trial. We disagree with this contention.

 The granting or the refusal to grant a new trial because of the excessiveness of the verdict is within the discretion of the trial court and its decision will be sustained by an appellate court absent a gross abuse of that discretion. *Botek v. Mine Safety Appliance Corp.*, 531 Pa. 160, 611 A.2d 1174 (1992); *Mineo v. Tancini*, 349 Pa.Super. 115, 502 A.2d 1300 (1986), *aff'd*, 517 Pa. 335, 536 A.2d 1323 (1988). In determining whether a verdict is excessive a court may consider the following factors: (1) the severity of the injury; (2)

whether the injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony; (3) whether the injury is permanent; (4) whether the plaintiff can continue with his or her employment; (5) the size of out-of-pocket expenses; (6) The amount of compensation demanded in the original complaint. *Kemp v. Philadelphia Transportation Company,* 239 Pa.Super. 379, 361 A.2d 362 (1976). However, as each case is unique, the court should apply only those factors which are relevant to that particular case before determining if that verdict is excessive. *Mineo* at 126, 502 A.2d at 1305.

 The trial court considered the verdict in the present case in light of these factors, and determined that because Harding's injuries were severe, disabling and permanent and will continue to prevent Harding from resuming his former employment, the verdict was not excessive. After a thorough review of the record, we are constrained to agree with the trial court's conclusion that the verdict should be upheld.

Seventh, Conrail alleges that the trial court erred by instructing the jury that Harding could recover for "lost economic horizons" or the loss of future earning capacity. We find no error.

 The test for impaired earning capacity is whether the economic horizon of the disabled person has been shortened because of the injuries sustained as a result of the tortfeasor's negligence. *Bochar v. J.B. Motors,* 374 Pa. 240, 97 A.2d 813 (1953); *Lewis v. Pruitt,* 337 Pa.Super. 419, 487 A.2d 16 (1985). Evidence of permanent injury by itself is sufficient to submit the question of Harding's lost economic horizons to the jury. *Janson v. Hughes,* 309 Pa.Super. 399, 455 A.2d 670 (1983).

In this case, it is undisputed that Harding suffered permanent debilitating injuries as a result of the accident. The evidence also established that Harding will never be able to resume his former occupation as a trainman. Based on our review of the record, we conclude that the trial court properly

submitted the issue of Harding's lost economic horizons to the jury.

■ Eighth, Conrail maintains that the trial court erred in failing to instruct the jury that any damages awarded to Harding would not be subject to federal income tax. We conclude that Conrail has waived this issue by failing to raise it before the trial court.

■ Only those issues properly raised in the trial court may be reviewed on appeal. *Commonwealth v. Brown*, 234 Pa.Super. 119, 338 A.2d 659 (1975); Pa.R.A.P. 302(a). In *Brown*, the defendant's counsel did not object to the trial court's charge to the jury but rather acquiesced in the trial court's decision to give a general charge. *Brown* at 122, 338 A.2d at 660. There, we concluded that any objection to the trial court's instructions to the jury had been waived for the purposes of appellate review. *Brown, supra.*

In the present case, Conrail did not object to the trial court's decision not to give Conrail's requested point for charge which specifically informed the jury that the amount of the verdict would not be subjected to taxation. N.T., January 17–18, 1990 at 4. Following the completion of its instructions to the jury, the trial court asked counsel for any additions or corrections to the jury charge. Counsel for Conrail offered exceptions to various portions of the jury instructions but did not object or take exception to the trial court's failure to include the fact that any damages awarded would not be subject to taxation. Because Conrail failed to object to the trial court's charge to the jury on the issue of taxation, we may not consider this allegation of error on appeal. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

Accordingly, for the foregoing reasons, the order of the trial court is affirmed.