**Hallowell v. Wuestkamp**

C.P. of Bucks County, no. 92-8522.

*David S. Dessen,* for plaintiffs.
*Glenn D. Hains,* for defendants.

RUFE, J., *J.,* May 2, 1995—This opinion is written pursuant to an appeal by the above-captioned plaintiffs from our order of January 9, 1995 denying plaintiffs' motion for a new trial and/or judgment notwithstanding the verdict. On appeal, plaintiffs argue that this court erred in failing to grant a new trial and/or judgment n.o.v. because the jury's verdict in favor of defendant, Maryanne Wuestkamp was contrary to the weight of the evidence established at trial.[1]

On April 3, 1991, plaintiff, Theresa Hallowell, was driving a Bucks County Intermediate Unit school van down Holland Road in Bucks County. Ms. Hallowell was required to make a sudden stop and the van was subsequently struck in the rear by the vehicle operated by defendant, Maryanne Wuestkamp. Plaintiffs filed a complaint on or about September 10, 1992 seeking compensation for injuries sustained as a result of the accident. A three day jury trial was held in August of 1994. As defendant had admitted her liability in causing the accident, the remaining question for the jury was whether the injuries claimed by plaintiff were caused by the April 3, 1991 accident. On August 26, 1994, the jury returned its verdict in favor of defendant. Timely post-trial motions were filed by plaintiffs requesting a new trial and/or judgment n.o.v. On January

---

1. Defendant Dennis Wuestkamp was dismissed from this cause of action without objection. (N.T., Volume III, p. 3.)

9, 1995, this court entered its order denying plaintiffs' post-trial motions. The instant appeal followed.

It is within the discretion of the trial court to decide whether to grant a new trial on the weight of the evidence grounds, and the trial court's decision will not be disturbed absent an abuse of discretion. *Dolan v. Carrier Corporation,* 424 Pa. Super. 615, 623 A.2d 850 (1993). The Pennsylvania courts have limited the circumstances for granting a new trial on the basis of weight of evidence issues to those instances where the evidence supporting the verdict is so inherently improbable and so contrary to admitted or proven facts so as to shock one's sense of justice. *Houseknecht v. Walters,* 404 Pa. Super. 85, 590 A.2d 20 (1991); *Thompson v. City of Philadelphia,* 507 Pa. 592, 493 A.2d 669 (1985). "A reviewing court may not reweigh evidence, and a new trial may not be granted merely because the jury could have drawn different conclusions or inferences. . . ." *Sundlun v. Shoemaker,* 421 Pa. Super. 353, 361, 617 A.2d 1330, 1334-35 (1992).

Here, after carefully reviewing the record, we could not conclude that the jury's verdict was unreasonable or against the weight of the evidence. Although liability was conceded by the defendant, plaintiff still had the burden of proving that the injuries of which she complained were the result of the April 3, 1991 accident. The jury determined that plaintiff failed to meet her burden and the evidence supports such a conclusion.

Plaintiff testified that as a result of the accident she now suffers from significant back, neck, jaw and wrist pain. To support this contention, plaintiff offered the testimony of Evelyn D. Witkin, M.D. Plaintiff sought treatment from Dr. Witkin on the recommendation of a friend, even though she had treated with several different doctors prior to the accident. At the first visit

with Dr. Witkin on April 12, 1991, plaintiff provided a medical history and the doctor conducted a full examination. Based upon the history provided by plaintiff and the results of the physical examination, Dr. Witkin diagnosed plaintiff as suffering from a cervical lumbosacral sprain with myofacial syndrome. Dr. Witkin opined, to a reasonable degree of medical certainty, that plaintiff's injuries were indeed caused by the automobile accident of April 3, 1991.

However, on cross-examination it was determined that the medical history provided by plaintiff, which formed the basis of Dr. Witkin's opinion, was noticeably incomplete. Although the doctor was aware that plaintiff had injured her back in 1982, she did not know that plaintiff had re-injured her back later that same year. Dr. Witkin did not know that plaintiff had been placed under heavy work restrictions due to the ongoing problems with her back. Dr. Witkin was never told of a back injury sustained by plaintiff in February of 1990. Dr. Witkin did not know that plaintiff had complaints of acute and severe neck pain prior to the accident. Dr. Witkin admitted that she had no knowledge of any of plaintiff's wrist problems which preceded the accident and the doctor agreed that such information would have been significant to her testimony linking the pain in plaintiff's wrists with the cervical injury in her back. Plaintiff never informed the doctor that she had complained of pain and cracking in her jaw several months prior to the accident nor did she relate to the doctor that she fell down a flight of stairs in September of 1990. After all of this additional information was brought to Dr. Witkin's attention, the following questions were asked:

"Q. Though, would it be fair to say, Doctor Witkin, that you really cannot testify with any degree of medical

certainty based upon the information that we now know that she had a preexisting problem, that her complaints are all causally related to the accident of April 1991?

"A. I believe that to be accurate.

"Q. Okay. So, if I would then ask you whether your testimony would be different, I assume your answer would be yes, that it's not—

"A. Well—

"Q. —causally related based upon knowledge now that you receive that there was—that she had prior existing problems?

"A. I don't know what is preexisting and what is directly related to the 1991 accident." (N.T., deposition of Dr. Witkin, page 89.)

The doctor also stated that she did not review the x-rays taken at Abington Hospital on April 7, 1991, even though she was aware that the x-rays had been taken. After examining the report from Abington Hospital, Dr. Witkin admitted that the films suggested a degenerative condition which preexisted the accident. Given the equivocal nature of Dr. Witkin's opinions, it was not unreasonable for the jury to have rejected the doctor's testimony.

The same deficiencies are evident in the testimonies of plaintiff's additional medical experts. Plaintiff presented Stuart Rosan, D.O., to discuss her medical history prior to the accident. While the doctor was familiar with many of the medical problems suffered by plaintiff prior to the accident, his testimony did not aid in linking plaintiff's injuries to the April 3, 1991 auto accident. In fact, plaintiff did not seek medical attention from Dr. Rosan for injuries related to the automobile accident until November of 1991. Dr. Rosan never reviewed the x-rays taken at Abington Hospital on April 7, 1991

because plaintiff never informed him that such x-rays had been taken. Dr. Rosan was also unaware that an EMG study was done on plaintiff's cervical area on June 13, 1991. After reviewing the results of the EMG study, Dr. Rosan agreed that the report evidenced a normal study. Finally, Dr. Rosan acknowledged during cross-examination that he was not familiar with any of plaintiff's accidents or injuries which occurred prior to January 1986. Consequently, the evidentiary value placed upon Dr. Rosan's testimony by the jury understandably could be minimal.

The third medical expert presented by plaintiff was E. Steven Moriconi, D.M.D. Dr. Moriconi is an oral and maxillofacial surgeon who first began treating plaintiff in January of 1992. At plaintiff's first visit Dr. Moriconi obtained a medical history from plaintiff and conducted a physical examination. Based upon that history and examination, Dr. Moriconi stated, to a reasonable degree of medical certainty, that the injuries to plaintiff's jaw were related to the accident of April 3, 1991. However, when questioned further about his opinion during cross-examination, Dr. Moriconi admitted that he had no idea whether plaintiff suffered from jaw problems prior to the accident and further, that he could not say whether the problem preexisted the accident or not. The inadequacy of Dr. Moriconi's testimony can best be explained by the following dialogue:

"Q. Well, would it not be helpful to you, Dr. Moriconi, to find out whether, in fact, she had any of these complaints regarding her jaw and would not the family dentist be the one professional who can give you that information?

"A. Possibly. Depends on whether the family dentist was involved in that type of examination prior to it and whether there was any real need. The point that

I saw her, I wasn't particularly concerned whether her jaw problem was related to her accident or not. I was concerned with helping her and getting her better.

"Q. I understand. I understand.

"A. So it was really at that point an academic issue as to whether this problem preexisted." (N.T., deposition of Dr. Moriconi, page 42.)

Clearly, Dr. Moriconi's testimony did not support plaintiff's assertion that her jaw problems were the result of the auto accident.

As noted previously, it remained plaintiff's burden to prove that her injuries were the result of the April 3, 1991 accident. The jury was instructed that plaintiff would only be entitled to compensation for those injuries which were caused by the accident. The testimony presented by plaintiff's medical experts yielded equivocal opinions which to the jury did not satisfy plaintiff's requisite burden of proof. The jury's verdict cannot be said to have shocked this court's sense of justice. As stated by the Superior Court in *Morgan v. Philadelphia Electric Company,* 299 Pa. Super. 545, 549, 445 A.2d 1263, 1265 (1982), "where a plaintiff's evidence as to damages is contested and placed in doubt, it is within the jury's power to decide that the plaintiff did not meet his burden of proof and to award no damages." In the instant action, there was sufficient basis for the jury to have disbelieved plaintiff's testimony and remain unpersuaded by plaintiff's experts.

Interestingly, plaintiff argues that it is the testimony of defendant's medical expert which establishes the causal connection between plaintiff's injuries and the accident. Defendant offered the testimony of Milton A. Wohl, M.D. Dr. Wohl performed an independent medical examination of plaintiff on May 20, 1994. In connection thereto, Dr. Wohl reviewed all of the relevant

medical records accumulated in connection with plaintiff's medical history and treatment. Based upon all of these sources, Dr. Wohl made the following conclusion:

"A. . . . And I stated, it more or less confirms my clinical impression that I found no evidence of any herniated disk of a symptomatic nature in the neck or the low back. That these are degenerative changes. They are not the types of things one sees which are symptomatic or causing pressure upon the nerves, the nerve roots, the foramina and so forth. These are long-standing and degenerative in nature." (N.T., deposition of Dr. Wohl, page 44.)

The doctor opined that plaintiff's complaints were due to arthritic changes and not attributable to a single episode of injury.

Plaintiff contends that Dr. Wohl's statement concerning probable contusions and a paracervical and paralumbar sprain from the nature of the incident proves that plaintiff was injured and entitles her to compensation for those injuries, even if only nominal. It is well known, however, that a jury can choose to believe any part of a witness's testimony and disregard any part of the testimony which they disbelieve. *Mitzelfelt v. Kamrin,* 526 Pa. 54, 584 A.2d 888 (1990). Given the considerable amount of evidence indicating that plaintiff's injuries preexisted the April 3, 1991 accident, it was not unreasonable for the jury to have accepted such testimony instead of that one sentence from Dr. Wohl's testimony to which plaintiff refers. Moreover, Dr. Wohl's testimony, taken as a whole, indicates that as of the date of his examination of plaintiff, there was no relationship between plaintiff's complaints and the auto accident of April 3, 1991. The jury's verdict was supported by the evidence and, therefore, plaintiff's request for a new trial was denied.

Alternatively, plaintiff argues that she is entitled to judgment notwithstanding the verdict, "a judgment notwithstanding the verdict may be entered only in a clear case, where after viewing the evidence in the light most favorable to the verdict winner, no two reasonable minds could fail to agree that the verdict was improper." *Harding v. Consolidated Rail Corporation,* 423 Pa. Super. 208, 216, 620 A.2d 1185, 1189 (1993). A judgment n.o.v. cannot be used so as to invade the province of the jury, especially where the jury's determination is based partly on questions of conflicting testimony and credibility of witnesses. *Trawick v. Nationwide Mutual Insurance Company,* 242 Pa. Super. 271, 363 A.2d 1265 (1976).

In the instant matter, there was a material dispute over whether plaintiff's injuries were caused by the April 3, 1991 accident. Both parties presented medical experts in support of their respective positions. It was for the jury to determine the credibility of the witnesses. Considering the foregoing analysis of the evidence of record, and taking such evidence in a light most favorable to defendant as the verdict winner, reasonable minds could differ over the appropriateness of the verdict rendered by the jury. Given the equivocal opinions offered by plaintiff's experts concerning causation, and the comprehensive medical history evidencing plaintiff's chronic problems with her back, neck and wrists, a jury could rationally find that plaintiff's injuries existed prior to the April 3, 1991 automobile accident. Since causation was the paramount issue in dispute in this case, the jury's resolution of the conflicting evidence must stand.

For all the foregoing reasons, plaintiff's motions for post-trial relief were denied.