# Moore v. Etorma

*Marc Greenfield,* for plaintiff.
*Paul G. Kirk,* for defendant.

KEOGH, *J.,* March 5, 2001—

## FACTUAL HISTORY

Viewing the evidence in the fight most favorable to the plaintiff as the verdict winner, the following facts were proven at trial:

At approximately 7 p.m. on August 21, 1997, the plaintiff, Henry Moore, was operating his motor vehicle near the intersection of 11th and Somerville Streets in Philadelphia. Mr. Moore was traveling on 11th Street. As he approached the intersection, the vehicle operated by the defendant, Eloise Etorma executed a left-hand turn in front of his vehicle.[1] (N.T. 08/14/00, p. 58.)

---

1. The parties agreed to dismiss the defendant, Rudolfo Etorma, from the suit. Rudolfo Etorma was the owner of the vehicle operated

Plaintiff's vehicle sustained severe front end damage. As a result of the impact both front seat air bags in plaintiff's vehicle deployed. There were two impacts between the parties' vehicles. The first occurred when the defendant made the left-hand turn in front of the plaintiff's vehicle. After the initial impact, when the plaintiff's vehicle was at a stop, the defendant's car rolled back down a hill and struck the plaintiff's car while he was still occupying it. (N.T. 08/14/00, pp. 58-60).

Immediately following the accident, plaintiff complained of burns on his wrists from the deployment of the air bags, leg and ankle pain, as well as a headache. He received emergency room treatment at Chestnut Hill Hospital. Mr. Moore was not admitted. (N.T. 08/14/00, pp. 60-61.)

The next day, plaintiff began experiencing bilateral back and leg pain, with a tingling and numbing sensation. (N.T. 08/14/00, pp. 61-62). The pain intensified over the ensuing weeks forcing Mr. Moore to seek additional medical treatment. He treated with Dr. Arnold Lincow for approximately eight months. His treatment included trigger point injections, application of heat and physical therapy. (N.T. 08/14/00, pp. 64-65; N.T. 05/28/00 videotape deposition of Dr. Lincow, pp. 16-23.)

Several months after his initial eight months of treatment, Mr. Moore returned to Dr. Lincow since he continued to have leg and back pain. He received two additional injections and a prescription for Motrin. (N.T. 08/14/00, p. 65). Plaintiff underwent two lumbar spine CAT

---

by Eloise Etorma. Defendant, Eloise Etorma, admitted negligence for the August 21, 1997 motor vehicle accident. (N.T. 08/15/00, p. 7.)

scans and an EMG. Dr. Lincow opined that plaintiff sustained serious injuries as a result of the August 21, 1997 motor vehicle accident, including a herniated disc, at the L4-L5 level and radiculopathy at the L5-S1 level. (N.T. 05/28/00 videotape deposition of Dr. Lincow, pp. 24-28, 31.)

At the time of the accident, plaintiff had been employed for 11 years with Wonder Bread. He was a head packer on the assembly line that made doughnuts. (N.T. 08/14/00, pp. 55-56.) Mr. Moore was unable to work for approximately two nonconsecutive days as a result of the accident. Although he continues in his pre-accident position with Wonder Bread, he is unable to perform his job as he did prior to the motor vehicle accident. (N.T. 08/14/00, pp. 71-72, 76.)

Before the accident, his job duties included lifting 50-pound bags of sugar and mixing the sugar into the other ingredients used to make doughnuts. Since the August 1997 accident, Mr. Moore has been unable to lift the bags of sugar. Instead, he must cut the bags open and scoop the sugar into the mix. (N.T. 08/14/00, pp. 71, 85-86.)

Additionally, plaintiff's personal activities have been affected by the injuries he sustained in the August 21, 1997 motor vehicle accident. He is unable to take out the trash, mop the floors in his house or lift laundry baskets as he did before the accident. Plaintiff has difficulty lifting anything heavier than 15 pounds. (N.T. 08/14/00, pp. 66-67.) He is also unable to walk his dog, a Great Dane that weighs over 100 pounds, without experiencing back pain when the dog pulls on her leash. Plaintiff is no longer able to walk, play sports and play with his

two children as he did before the accident. (N.T. 08/14/ 00, pp. 72-73, 88-89, 107-109.)

Plaintiff continues to feel residual pain from the injuries he sustained in the accident. He also has difficulty sleeping because of pain in his right leg. (N.T. 08/14/00, pp. 66, 69-70.)

## PROCEDURAL HISTORY

On March 9, 1999, plaintiff commenced this action against the defendants. Defendants filed an answer and new matter.

Plaintiff filed a motion for preclusion and partial summary judgment on March 31, 2000. On May 12, 2000, the Honorable William Manfredi Jr. denied the motion.

A jury trial commenced in this matter on Friday, August 11, 2000. On August 15, 2000, the jury returned a verdict for the plaintiff, and awarded $75,000 in compensatory damages.

Defendant, Eloise Etorma, filed a motion for post-trial relief on August 21, 2000. Oral argument on the motion was conducted on September 12, 2000. On September 26, 2000, this court denied defendant's request for post-trial relief.

On November 28, 2000, judgment was entered on the jury's verdict in favor of the plaintiff.[2] Defendant filed an appeal to the Pennsylvania Superior Court on December 27, 2000.

---

2. Before judgment in favor of the plaintiff was entered, defendant filed a notice of appeal to the Superior Court on October 25, 2000. Pursuant to Pa.R.A.P. Rule 301, an appeal cannot be perfected until judgment has been entered. Defendant filed a "second" notice of appeal after judgment was entered in the case.

This court ordered the defendant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. Rule 1925(b). Defendant filed a statement on November 15, 2000.

## ISSUES ON APPEAL

"(1) Defendant contends that the trial court erred in determining that the plaintiff had full tort coverage.

"(2) Defendant contends that the trial court erred in granting plaintiff's motion in limine on the limited tort issue, contending that to do so was an abuse of discretion since Judge Manfredi had denied plaintiff's motion for partial summary judgment involving the same issue.

"(3) Defendant contends that the trial court erroneously permitted the plaintiff to orally refile a motion for summary judgment after jury selection and after the case management order's deadline for filing motions.

"(4) Defendant contends that the verdict is excessive.

"(5) Defendant contends that the verdict was against the weight of the evidence."

## DISCUSSION

### Limited Tort Issue

Defendant's first three contentions identified in the statement of matters complained of on appeal address the limited tort issue presented in this case. Before addressing the substance of the limited tort issue, the procedural posture will be addressed.

Defendant argues that this court erred in granting "plaintiff's summary judgment motion on the limited tort

issue which had been previously denied by a different judge of the same court," and in permitting the plaintiff to "orally refile the summary judgment motion." (sections 2 and 3 of defendant's statement of matters complained of on appeal)

Plaintiff filed a motion for preclusion and partial summary judgment on March 31, 2000. Plaintiff sought to preclude the defendant from introducing into evidence at trial a Pennsylvania assigned risk plan notice to named insured selection of tort option form,[3] and also requested a finding that the plaintiff was subject to full tort under the Motor Vehicle Financial Responsibility Act, hereinafter MVFRA.[4]

The form indicates that the limited tort option was elected and bears a signature for a Henry L. Moore III. Plaintiff claimed that he did not sign the election form.

A response was filed by the defendant, to which the plaintiff replied. Oral argument was not conducted on the motion. On May 12, 2000, the Honorable William Manfredi signed the proposed order attached to defendant's response to the plaintiff's motion. The order reads "And now, May 12, 2000, upon consideration of plaintiff's motion for preclusion and partial summary judgment, and defendant's answer thereto, it is ordered that plaintiff's motion is denied." Judge Manfredi did not issue an opinion with the order.

When this case was called for trial in August 2000, plaintiff orally made a motion in limine to preclude the

---

3. A copy of the tort election form is attached as exhibit "E" to plaintiff's motion for preclusion and partial summary judgment.
4. 75 Pa.C.S. §1701 et seq.

introduction of the tort election form. (N.T. 08/14/00 p. 3.) Generally, it is the law of this Commonwealth that a judge should not overrule the decision of another judge with coordinate jurisdiction sitting in the same case. *Mellon Bank N.A. v. National Union Insurance Company of Pittsburgh,* 2001 WL 79985 (Pa. Super. 2001). The application of this principle, however, depends upon the procedural posture of the case. *Id.,* *4. Our Supreme Court has stated that

"Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question." 2001 WL 79985, *4, citing *Gerrow v. Shincor Silicones Inc.* 756 A.2d 697 (Pa. Super. 2000); see also, *Abbott v. Anchor Glass Container Corp.,* 758 A.2d 1219 (Pa. Super. 2000).

A motion in limine is a *"pretrial motion requesting [a] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [a] moving party that curative instructions cannot prevent predispositional effect on [a] jury."* Black's Law Dictionary via West Law; see also, *Commonwealth v. Noll,* 443 Pa. Super. 602, 662 A.2d 1123 (1995). Outside the presence of the jury, this court heard argument on plaintiff's motion in limine. At the onset of argument, it was noted that "intervening changes of fact" had occurred

since Judge Manfredi denied the motion for preclusion. Plaintiff's counsel stated that the insurance agent, Lynn Smith who had sold the automobile insurance policy to the plaintiff gave testimony contradictory to her November 15, 1999 deposition testimony on the issue of whether or not the plaintiff signed the tort election form.[5] (N.T. 08/14/00, p. 3.)

In this matter, the motion for preclusion and motion in limine differ in kind to permit the actions of this court. While entertaining the motion in limine, this court spoke with Judge Manfredi regarding his May 12, 2000 order. Judge Manfredi advised that he did not intend to deny plaintiff's motion with prejudice since he believed that the limited tort issue was an issue that the trial judge had to resolve. Judge Manfredi offered, upon either party's request, to withdraw the order to effect his intent. *Id.* Accordingly, this court finds that it neither erred or abused its discretion in ruling on plaintiff's motion in limine on the limited tort issue.[6]

Addressing the substantive issue regarding plaintiff's tort option, this court considered counsels' arguments, the language of the relevant portions of the MVFRA, as well as the pretrial testimony of the plaintiff and the in-

---

5. Ms. Smith's testimony for use at trial was videotaped. The tape was not shown to the jury given the court's ruling on the substantive limited tort issue. (N.T. 08/14/00, pp. 3, 6, 15-16.)

6. As for defendant's contention that the motion in limine was untimely, this court notes that from the outset of this case, plaintiff has contended that he was not bound by the limited tort option since he did not sign the election form. See plaintiff's response to defendant's new matter. Therefore, even if plaintiff's motion in limine was considered untimely, there was no prejudice to the defendant since she had notice of plaintiff's position.

surance agent Lynn Smith. After careful consideration, this court held that the issue of whether or not the plaintiff was bound by the limited tort option appearing on the tort election form of his insurance policy was an issue of law since the parties did not dispute the fact that the plaintiff, Henry Moore, did not sign the election form. (N.T. 08/14/00, p. 14.)

The controversy centered on whether plaintiff's wife, Lillian Moore, signed the election form with her husband's name, and if so, whether her actions could bind plaintiff to limited tort coverage. Plaintiff was the "named insured"[7] on the policy of insurance.[8] Lillian Moore was not listed as a named insured on the policy. *Id.* Pursuant to the definition section of section 1705 of the MVFRA, Mrs. Moore would have been an insured on the policy. An insured includes *"any individual residing in the household of the named insured who is a spouse or other relative of the named insured . . . ."* 75 Pa.C.S. §1705(f).

Mrs. Moore testified at her deposition that she did not sign the tort election form for her husband. She further testified that she had a conversation with Ms. Smith, advising her that she and her husband wanted full tort coverage. (N.T. 01/06/00 deposition of Lillian Moore, pp. 15-17, attached as exhibit "G" to plaintiff's motion for preclusion.)

---

7. "Named insured" is defined at 75 Pa.C.S. §1705(f) as *"Any individual identified by name as an insured in a policy of private passenger motor vehicle insurance."*

8. The declaration sheet for the insurance policy in effect at the time of the accident is attached to defendant's response to the motion for preclusion as exhibit "A"; see also, N.T. 11/15/99 deposition of Lynn Smith, p. 45 attached as exhibit "D" to defendant's response.

At her deposition, Ms. Smith recalled meeting with Mrs. Moore regarding the application for insurance covering the August 1997 motor vehicle accident, but she does not know whose signature appears on the election form. Ms. Smith denied signing the form on behalf of Mr. Moore. (N.T. 11/15/99 deposition of Lynn Smith, pp. 12-13, 15-16, attached as exhibit "H" to plaintiff's motion for preclusion.)

Plaintiff claims that he is not subject to limited tort coverage since he did not sign the election form. (N.T. 08/14/00, pp. 3-6, 11-14.) The defense counters that Mrs. Moore signed the tort election form as plaintiff's agent, and therefore, bound plaintiff to limited tort coverage. *Id.* pp. 6-11, 14. Of course, the insurance agent knew, as the parties agreed, that the named insured, Henry Moore, had not signed the tort election form.

The resolution of the issue is one of statutory construction. The language of section 1705 repeatedly differentiates between "named insured" and "insured." Subsection (a)(1) of section 1705 governs the insurance company's notification obligation. This subsection provides that insurers are required to *"notify in writing each named insured of the availability of two alternatives of . . . insurance."* The statutorily required language for the notice, entitled "Notice To Named Insureds," is then set forth. The notice, which also serves as the election form provides a place for the "named insured" to sign and date the form.

Furthermore, subsection (a)(2) of section 1705 states, in part that *"Where there are two or more named insureds on a policy, any named insured may make the full or*

*limited tort election provided for in this section for all named insureds on the policy."* Likewise, subsection (a)(3), which discusses a failure of a named insured to respond to the notice states that *"If a named insured has not responded to either notice 10 days prior to the renewal date, the named insured and those he is empowered by this section to bind by his choice are conclusively presumed to have chosen the full tort alternative."*

Most importantly, subsection b of section 1705 governs the application of tort options and both subparagraphs 1 and 2 begin with the language *"The tort option elected by a named insured shall apply . . . ."*[9]

Since there was no dispute that plaintiff had not signed the tort election form, for purposes of the motion in limine this court gave the benefit of the doubt to the defendant and accepted defendant's argument that Lillian Moore had signed the tort election form on her husband's behalf. Given the fact, however, that section 1705 clearly distinguishes between "named insured" and "insured," and recognizing the MVFRA's intent to provide full tort coverage whenever there is a question as to whether full or limited tort coverage is applicable,[10] this court concluded that Mrs. Moore's actions could not bind the plaintiff to limited tort coverage since only a named insured can make a tort option election under the Act. This court determined that plaintiff was not bound by the limited tort election, and therefore had full tort coverage for the

---

9. The insurance agent, Lynn Smith, testified that the person applying for insurance should sign the forms. (N.T. 11/15/99 deposition of Lynn Smith, p. 23, attached as exhibit "H" to plaintiff's motion for preclusion.)

10. *Ickes v. Burkes,* 713 A.2d 653 (Pa. Super. 1998).

August 21, 1997 motor vehicle accident. Accordingly, he could seek economic, as well as noneconomic damages at trial.

## Excessiveness of the Verdict

Defendant also contends that a new trial is warranted since the verdict was excessive. In *Harding v. Consolidated Rail Corporation,* 423 Pa. Super. 208, 620 A.2d 1185 (1993), the Superior Court addressed this issue. The court stated that *"[t]he granting or the refusal to grant a new trial because of the excessiveness of the verdict is within the discretion of the trial court and its decision will be sustained by an appellate court absent a gross abuse of that discretion."* 423 Pa. Super. at 225, 620 A.2d at 1193. (emphasis added)

In deciding this issue, the *Harding* court noted that several factors may be considered by a court in determining whether a verdict is excessive. They include the severity of the injury, whether the injury is manifested by objective physical evidence or whether it is only revealed by subjective testimony, whether the injury is permanent, whether the plaintiff can continue with his employment, the size of the out-of-pocket expenses and the amount of the compensation demanded in the original complaint. *Id.*; see also, *Tesauro v. Perrige,* 437 Pa. Super. 620, 650 A.2d 1079 (1994); *Petrasovits v. Kleiner,* 719 A.2d 799 (Pa. Super. 1998).

Considering the relevant factors in the context of this case, the evidence presented at trial established that plaintiff was in a serious motor vehicle accident with the defendant on August 21, 1997. As a result of the accident

the front seat air bags in plaintiff's vehicle deployed. Additionally, his vehicle was towed from the scene. (N.T. 08/14/00, p, 59; N.T. 05/28/00 videotape deposition of Dr. Lincow, p. 17.)

Immediately following the accident, plaintiff experienced pain in his wrists, shinbone and ankle and had a headache. On the night of the accident, he was treated in the emergency room of Chestnut Hill Hospital. (N.T. 08/14/00, p. 61; N.T. 05/28/00 videotape deposition of Dr. Lincow, p. 18.)

The day after the accident, plaintiff began experiencing low back pain, with bilateral radiculopathy into his lower extremities. Rather than dissipate, plaintiff's symptoms increased over the ensuing weeks and he sought medical treatment with Arnold S. Lincow D.O. (N.T. 08/14/00, pp. 62-65.)

Plaintiff first treated with Dr. Lincow on September 10, 1997. He continued to complain of severe low back pain radiating into his legs. Dr. Lincow's initial examination revealed that plaintiff was suffering from acute lumbosacral strain and sprain, traumatic lumbosacral myofascitis, clinical lumbar radiculopathy and clinical herniated lumbar discs. (N.T. 05/28/00 videotape deposition of Dr. Lincow, pp. 19-23.)

Dr. Lincow ordered diagnostic studies, prescribed muscle relaxants, anti-inflammatory medication, an orthopedic appliance and physical therapy. Additionally, Dr. Lincow administered trigger point injections to plaintiff's low back. (N.T. 05/28/00 videotape deposition of Dr. Lincow, p. 22.)

Plaintiff underwent a CAT scan of the lower back on October 10, 1997 and again on March 6, 1998. He also

had an EMG performed on March 5, 1998. (N.T. 05/28/00 videotape deposition of Dr. Lincow, pp. 25-26, 74.) The diagnostic studies confirmed Dr. Lincow's clinical diagnosis that plaintiff suffered a herniated disc at L4-L5, which was indenting the thecal sac and that he had bilateral lumbar radiculopathy at L5-S1. (N.T. 05/28/00 videotape deposition of Dr. Lincow, pp. 25-26, 81.)

Plaintiff treated with Dr. Lincow from September of 1997 through March of 1998. At the time of his discharge, Dr. Lincow opined that as a result of the August 21, 1997 motor vehicle accident, plaintiff suffered a lumbosacral strain and sprain, paravertebral myofascial pain syndrome and myofascitis and unresolved lumbar radiculopathy, progressive traumatic disc herniation at L4-L5, protruding lumbar discs from L3 through S1 and early reflex sympathetic dystrophy involving the right lower extremity. (N.T. 05/28/00 videotape deposition of Dr. Lincow, pp. 29-31.) Plaintiff's prognosis was poor for a full recovery, and in fact, Dr. Lincow stated that plaintiff's condition would likely deteriorate in the future and that he may require surgery. *Id.,* p. 31.

Although the plaintiff did not miss a significant amount of time from work, he has not been able to perform his job duties as he did before the accident. He is no longer able to lift the 50-pound bags of sugar, and must instead cut them open and scoop the sugar into the mix for making doughnuts. (N.T. 08/14/00, pp. 71, 86; N.T. 05/28/00 videotape deposition of Dr. Lincow, p. 64.)

Likewise, plaintiff continues to experience limitations in his personal activities. At the time of the accident, Mr. Moore was 26 years old and was married with two small

children. (N.T. 08/14/00, pp. 66-67, 72-73, 88-89, 107-109.)

Defendant conceded that her negligence was the cause of the August 21, 1997 motor vehicle accident. Additionally, she offered no medical evidence to contradict the testimony of Dr. Lincow.[11]

The evidence demonstrated that as a result of the August 21, 1997 accident, plaintiff suffered a significant low back injury, including a herniated disc, and that he continues to suffer residual damages that effect both his occupational and personal activities. Evaluating the verdict in light of all relevant factors, this court finds that the verdict of $75,000 was not excessive.

## Weight of the Evidence

Defendant's last contention is a boilerplate claim that the "Verdict was against the weight of the evidence." (¶5 of defendant's statement of matters complained of on appeal.)

The granting of a new trial on the ground that the verdict was contrary to the weight of the evidence is also a matter within the discretion of the trial court. Upon review, an appellate court must not substitute its opinion for that of the trial judge, but must determine if the trial court abused its discretion in denying the request for a new trial. *Boutte v. Seitchik,* 719 A.2d 319 (Pa. Super. 1998).

---

11. Plaintiff was examined by a physician on behalf of the defendant. (N.T. 08/14/00, pp. 73-74.)

As with a claim that a verdict is excessive, a weight of the evidence claim is to be considered with the understanding that a new trial is warranted only where the verdict is so contrary to the evidence as to shock one's sense of justice. This does not occur merely because there may be a conflict in the testimony or because the trial judge may have arrived at a different conclusion on the same set of facts presented to the jury. *Id.,* p. 21. In considering the sufficiency of the evidence to sustain a verdict, the evidence must be viewed in the light most favorable to the verdict winner, with that party receiving the benefit of all reasonable inferences. *Robinson v. Uphole,* 750 A.2d 339 (Pa. Super. 2000).

The jury, acting within its prerogative as the sole finder-of-fact, evidently accepted plaintiff's testimony and that of Dr. Lincow as credible. Defendant offered no testimony to counter this testimony. Accordingly, this court finds that there was sufficient evidence presented at trial to sustain the jury's verdict.

## CONCLUSION

For the reasons stated above, defendant's requests for post-trial relief raised in the statement of matters complained of on appeal do not warrant relief.